UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT E. JOHNSON,

 Plaintiff,

 v.

HAROLD CLARKE *et al*.,

 Defendants.

Case No. C05-5401FDB

ORDER GRANTING A STIPULATED EXTENSION OF TIME TO FILE DISPOSITIVE MOTIONS, GRANTING DEFENDANTS A PROTECTIVE ORDER, DENYING PLAINTIFFS MOTION FOR RECONSIDERATION, AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS

 This Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. § 636(b)(1)(B). Plaintiff is not proceeding *in forma pauperis* and paid the full filing fee. (Dkt. # 1, receipt # 513451). Before the court are a number of motions including:

 1. A stipulated motion to extend the dispositive motion deadline (Dkt. # 46).

 2. Defendants motion for a protective order regarding discovery (Dkt. # 48).

 3. Plaintiff's motion for reconsideration regarding discovery (Dkt. # 53).

 4. Plaintiff's motion for sanctions for failure to comply with a court ordered motion to compel (Dkt. # 54).

ORDER 1

The stipulated motion to extend the dispositive motion deadline asks the court extend the deadline until October 22nd, 2006 (Dkt. # 46).  Given the discovery dispute and the amount of time it may take for defendants to comply with this court order, the dispositive motion deadline is struck from the courts scheduling order.  The court also strikes the date to file a joint status report.  **THE MOTION TO EXTEND THE DATE FOR FILING A DISPOSITIVE MOTION IS GRANTED.**  Dates for dispositive motions and a joint status report will be re-set after defendants' counsel informs the court defendants have complied with the terms of this order and **defendants counsel is ORDERED to inform the court when the discovery outlined in this order has been delivered to plaintiff**.

Defendants motion for a protective order involves consideration of prior discovery orders, and the reasoning for those rulings.  In May of 2006 plaintiff attempted to depose high ranking Officials in the Washington State Department of Corrections regarding the extended family visit policies that are at issue in this case.  Plaintiff is attempting to prove a violation of his equal protection rights and alleges the denial of Extended Family Visits in his case is racially motivated.  The high ranking officials opposed having their depositions taken (Dkt. # 19 and 20).  The court quashed the deposition notices and instructed plaintiff to seek the information he was trying to obtain through other forms of discovery (Dkt. # 24).

Plaintiff also sought to compel answers to written discovery (Dkt. # 23).  The court granted in part and denied in part a motion to compel on September 8th, 2006.  The court stated:

> At issue are the answers to nine interrogatories and four requests for production. Much of the courts analysis on the first interrogatory will be germane to all the discovery requests.
>
> Interrogatory number one asks:
>
> 1. In the Department of Corrections pursuant to DOC policy 590.100, how many African-American inmates participated in the Extended Family Visit program from January 2001 to January 2006, Please specify numbers of black inmates of each institution under DOC.
>
> Defendant Vail's response to the question was:
>
> OBJECTIONS:   This interrogatory is not reasonably calculated

ORDER 2

|   |   |
|---|---|
| 1 | to lead to the discovery of admissible evidence and is irrelevant to the time frame in Plaintiff's complaint. Additionally, this interrogatory is unduly burdensome and compound. |
| 2 |   |
| 3 |   |
| 4 | (Dkt. # 23, Attached answer to second set of interrogatories for Eldon Vail). |

This action involves an equal protection claim and an allegation of racial discrimination. To prove his case and to survive summary judgment plaintiff will necessarily need some statistical information as to how other similarly situated inmates are treated. As racial discrimination is alleged, the race of the inmates participating in the program at Mc Neil Island is relevant. Thus, defendants objection as to relevance is misplaced.

The time frame given by plaintiff goes back over four years from the time he was denied participation in the program. Three years is the statute of limitation in Washington. The request goes forward to the present, the time frame is arguably relevant. However, defendants argument regarding the relevance of any decision prior to 2005 also has some merit. Plaintiff is entitled to attempt to show a pattern or practice of discrimination. The court will limit the time frame to three years prior to denial of plaintiff's request to the present. To avoid any confusion the relevant time frame is from March 2002 to the present.

Plaintiff's request for information from any facility other than Mc Neil Island is not relevant to his claim. Plaintiff's denial of participation in the program came from the Superintendent of Mc Neil Island, Alice Payne. (Dkt. # 23). He is not entitled to data from other institutions.

To the extent data from other institutions might show bias on the part of those superintendents the evidence is irrelevant. It is irrelevant because plaintiff was not denied EFV's at another facilities and he lacks standing to litigate the issue on behalf of other inmates. To the extent plaintiff might seek to use the discovery of data from other institutions to bolster his argument that Mc Neil Island personnel discriminated against him the court must consider defendants objection based on the discovery being unduly burdensome and overly broad.

Defendants responded to the interrogatories as a group and argue that to obtain the statistical information plaintiff seeks each facility would need to be contacted. (Dkt. # 25) Defendants aver statistics of this nature do not now exist. There are twelve facilities with EFV programs. Defendants aver that at each of the twelve facilities every EFV application would have to be examined. (Dkt. # 25) They further argue the EFV applications do not contain information regarding race or release date of the inmate. (Dkt. # 25, page 4). This means that for each application research to determine the inmates race and release date would need to be done. Obviously the requested information has gone beyond an interrogatory seeking information a defendant may know or easily obtain and had turned into a request that the Department of Corrections undertake a sizable research project.

The court intends to focus the parties in this case to the relevant discovery at the relevant institution. The request to compel is **GRANTED IN PART.** The request is limited in time to March of 2002 to the present and limited to Mc Neil Island.

ORDER 3

1  (Dkt. # 30).

2  The defendants now seek a protective order and argue:

> On September 8, 2006, the Court granted Defendants' Motion for Extension of Time until September 29, 2006. Docket No. 43. Defendants' Motion included a declaration from the Legal Liaison Officer at MICC attesting that Defendants' required two months to comply with the Court's order. Docket No. 35, Attachment A, Declaration of Judy Hubert.
>
> However, while trying to comply with the Court's order, Defendants have enlisted the help of Barbara Parry, Public Disclosure Manager for the Washington State Department of Corrections, who regularly addresses such requests. Exhibit 1, Declaration of Barbara Parry, ¶ 2. Her assistance is critical when dealing with global requests for information.
>
> EFV applications are not centrally located either within DOC Headquarters or at McNeil Island Corrections Center (MICC). Exhibit 1, ¶ 3. Thus, in order to determine which inmates applied for EFVs and whether or not the EFVs were denied or approved, DOC staff will have to do a hand search through each inmate's central file to locate the actual EFV application. Id. For inmates who are incarcerated, central files are located with the inmate at the institution. Id. For inmates who are no longer incarcerated, central files are located in archives. Id.
>
> In order to determine how many inmates applied for EFVs at McNeil Island from 2002 to the present, DOC will have to pull a list of all inmates who have been housed at MICC since 2002. Exhibit 1, ¶ 4. I have asked that list be pulled. Id. It revealed that there were approximately 7,282 inmates housed at MICC since December 31, 2001. Id.
>
> I believe that it will take approximately 45 minutes per central file for staff to go through the file and locate the EFV application and make a copy of the application. Exhibit 1, ¶ 5. Thus, for 7,282 files, this would take approximately 5,462 staff hours. Id. In addition to these hours, I believe that an additional 14 days should be added in order to locate files that are kept in archives. Id.
>
> Once these applications are obtained, confidential information would also have to be redacted. Exhibit 1, ¶ 7. EFV applications and appeals contain private information regarding both inmates and their visitors. Id. This information includes birth dates, social security numbers, home addresses and telephone numbers, information about personal relationships, information about past crimes, etc. Id.

(Dkt. # 48, pages 2 and 3). Defendants note that even at a pay rate of 10 dollars per hour they estimate it will take nearly $55, 000 to comply with Mr. Johnson's discovery requests. (Dkt. # 48, page 4).

Defendants initial objection to the discovery was inadequate (Dkt. # 23, Attached answer to second set of interrogatories for Eldon Vail). The defendants set forth a legal conclusion with no explanation or reasoning to support it. Defendants response to the motion to compel was a little

ORDER 4

better and outlined the steps necessary for a global search but again, the response was somewhat abstract as it did not clearly give the court a picture of the amount of manpower or time needed to compile the statistical information.

Defendants have now quantified and explained the burden that production of this statistical data entails. Since December 31st, 2001 there have been over 7,000 inmates housed at MICC. Those inmates are now scattered through out the state system and some have been released. Locating each inmates central file in and of itself is a burdensome task. Searching each file to see if it contains an EFV application would also be a burdensome undertaking. The defendants would then need to determine the race of the person who had applied and pull sentence information from the Offender Based Tracking System to determine the sentence of that inmate. The court now has a clearer picture of what defendants objections meant.

Fed. R. Civ. P 26 (c) allows the court to enter "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The discovery sought by plaintiff is burdensome and expensive, but it is also relevant and well within the scope of discoverable information. Limiting or completely denying the discovery requests would be well within the courts discretion. However, the court is mindful that without evidence to support his claims plaintiff cannot hope to proceed.

Plaintiff's raises serious allegations. Plaintiff alleges that caucasian inmates with sentences longer than his were able to receive extended family visits while his request was denied because prison officials determined he has "no positive prognosis of release" (Dkt. # 1, page 16). Plaintiff maintains the reason given is pretext and he has been subjected to racial discrimination in violation of his equal protection rights.

The court notes that the parties have conferred and Mr. Johnson appears intractable and will not voluntarily limit or downsize his request. (Dkt. # 48, page 3). Further, the court notes Mr. Johnson is now insisting on production of documents he has been told do not exist (Dkt. # 53). While the court preference is for the parties to reach a compromise regarding discovery issues of this nature, it is clear that in this case court intervention is needed.

ORDER 5

The court is attempting to strike a balance that gives plaintiff meaningful discovery while at the same time places reasonable limits on the discovery process. The discovery requests were limited to McNeil Island in the courts June 30th 2006 order (Dkt. # 30). The court now limits the discovery request to current inmates on Mc Neil Island. This means the defendants do not need to search and find the location for 7, 282 inmate central files (that would be every inmate housed at Mc Neil Island since the start of 2002 according to defendants Dkt. # 48, page 3). The court is searching for a representative pool of files. The representative pool of files will consist of the central files for active inmates currently on Mc Neil Island (approximately 1284 files according to defendants Dkt. # 48, page 3). This pool of files will give plaintiff the opportunity to gather evidence to support his claim while at the same time help limit the burden and expense the discovery requests entail. Limiting the request to Mc Neil Island insures each file chosen is relevant to the extent that the files are from the institution where the alleged racial discrimination took place. **THE MOTION FOR A PROTECTIVE ORDER IS GRANTED BY THE LIMITING OF DISCOVERY AS AFOREMENTIONED**.

Plaintiff asks the court to reconsider denial of a motion to compel (Dkt. # 53). Plaintiff sought all documents relating to a recent change in the EFV policy which removed the section of the policy that had been used to deny him EFV visitation. Defendants responded and told plaintiff the documents no longer existed. Plaintiff then filed a motion to compel (Dkt. # 38). The court denied the motion noting that plaintiff had received a response to his requests and that the defendants cannot be compelled to produce something that does not exist (Dkt. # 47).

The court has carefully read Plaintiff's motion for reconsideration, searching for evidence that would support the motion. There is absolutely no evidence to indicate the defendants have been untruthful in responding to plaintiff's discovery request. Plaintiff's motion to compel, (Dkt. # 38), was based on speculation and conjecture, not evidence. That motion resulted in an Order to Show Cause why sanctions should be imposed. Plaintiff's response to that order is contained in his current motion asking the court to reconsider (Dkt. # 53). The response is wholly inadequate. Both the motion to compel and this motion for reconsideration are based on speculation and conjecture. **THE**

ORDER 6

**MOTION FOR RECONSIDERATION IS DENIED.  Further the court places plaintiff on warning that any further unsupported motions or improper discovery practices <u>WILL</u> result in monetary sanctions and possibly in dismissal of this action.**

Plaintiff's final motion seeks sanctions because defendants have been unable to comply with the court's prior motion to compel (Dkt. # 54).  Defendants have explained the complexity and burden that complying with the courts order would entail (Dkt. # 48).  The financial burden and time needed to comply with the courts order was sufficient reason grounds for a protective order.  Sanctions for failure to comply are not warranted.  Plaintiff's motion is **DENIED.**

The Clerk of Court is directed to send a copy of this Order to plaintiff and to counsel for defendants.

DATED this   25th day of October, 2006.

*/S/ J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge

ORDER 7